UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RUBIN WEEKS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:94-CV-1704 CAS |
| | ) |
| IAN WALLACE,[1] | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This closed matter is before the Court on petitioner's motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure for relief from final judgment. Petitioner requests that the Court re-open his § 2254 habeas petition, which was denied in 1995. This request is based, in part, on evidence petitioner has since uncovered, and which he alleges was improperly withheld by the state. The new evidence, he argues, is exculpatory and entitles him to habeas relief. Respondent opposes the motion and argues petitioner is not entitled to the relief he requests because petitioner's motion is nothing more than a successive habeas petition, which this Court is precluded from reviewing pursuant to 28 U.S.C. § 2244. For the following reasons, the Court will deny petitioner's request for relief from final judgment.

*I. Procedural Background*

In the early morning of October 13, 1991, a young women, Ms. Jolynn Alicia [Doe], was driving home from her work at a motel in Cape Girardeau, Missouri. Petitioner had seen Ms. Doe at her place of employment and followed her in his car. As he was driving behind her, he flashed his

---

[1] Petitioner is currently incarcerated at the Southeast Correctional Center in Charleston, Missouri. Ian Wallace is the Warden of the Southeast Correctional Center, and as petitioner's custodian, he is the proper party respondent. See Rule 2(a) of the Rules Governing § 2254 Cases.

lights seven or eight times. Ms. Doe pulled her car over and petitioner came over to the side of her car. He indicated that there was something wrong with her taillight or the back of her car. Ms. Doe partially rolled down her window. Using a large knife, petitioner forced his way into Ms. Doe's car. He forced Ms. Doe out of her car and into his and drove away. While in the car, petitioner performed acts of sodomy on Ms. Doe. He also questioned her as to when she had last had sexual intercourse, and she replied with her husband the day before.

Petitioner drove Ms. Doe to a farm in Bollinger County and took her to a barn where he raped and sodomized her. After sexually assaulting her, petitioner used duct tape to tie together Ms. Doe's ankles, knees, and hands. Petitioner left Ms. Doe in or near the barn and drove off. Ms. Doe was able to work free of the tape, and she ran down the road and sought help at a nearby farmhouse.

The authorities took Ms. Doe to a hospital. Using a rape kit, hospital personnel took samples of semen with a vaginal swab. They also collected semen from the victim's pants.

Petitioner was subsequently arrested in Mississippi. On November 5, 1991, petitioner executed a waiver of extradition and he was returned to the State of Missouri. Ms. Doe identified petitioner in a photo lineup. Upon returning to Missouri, petitioner was charged with kidnapping in Cape Girardeau County, and was charged with armed criminal action, forcible rape, and forcible sodomy in Bollinger County.

On February 13, 1992, petitioner pleaded guilty in Missouri state court to kidnapping and rape. At his plea hearing, he admitted to committing the offenses and denied that anyone had threatened or forced him to plead guilty. He also testified that his medication did not affect his ability to plead guilty, and that while he was drowsy, he was clear-headed. Based on his plea, the court entered a judgment of guilty against him and sentenced him to concurrent sentences of thirty

years imprisonment and life imprisonment. The court also informed petitioner about the availability of post-conviction relief pursuant to Mo. R. Crim. P. 24.035. Following his plea and sentencing, petitioner did not file a Rule 24.035 motion.

Prior to petitioner's guilty plea, there was a significant amount of evidence that was gathered in the investigation of the crime, including clothing from the victim, the rape kit, prints from the victim's car and prints from petitioner's car. Also, in investigating the crime, the police suspected that the person who had attacked Ms. Doe had stayed in Room 11 of the motel at which she worked. The police gathered a significant amount of evidence from the motel room, including prints, hair, cigarette butts, and miscellaneous trash items. The rape kit, pants, and dozens of items retrieved from Room 11 were sent to Southeast Missouri Regional Crime Laboratory (SEMO) for testing. SEMO issued its first report on November 8, 1991, and revised it in minor respects on November 26, 1991. The report noted that intact human spermatoza were located on both the vaginal swab and the victim's pants, which SEMO considered as evidence for Ms. Doe "having been involved in sexual intercourse, which culminated in ejaculation." See Doc. 53, Ex. D at 3. SEMO did not conduct DNA testing, but rather serology tests were performed on the samples in an attempt to determine blood type. These tests showed that the semen collected from the vaginal swab had been discharged by a person with Type–A blood , and the semen collected from the victims pants matched a Type–A blood and a Type–O blood. Id. at 4.

After receiving SEMO's report, the State obtained a search warrant and collected petitioner's blood, hair, and saliva for testing. These samples were sent to SEMO for testing in late November 1991.

On January 17, 1992, SEMO completed an additional report with results based on the samples taken from petitioner. The report was updated on February 12, 1992. These two reports were not disclosed to petitioner or the trial court before the entry of petitioner's guilty plea.[2] The January 17 report noted that someone other than petitioner had smoked the cigarettes found in Room 11, that none of the hairs tested belonged to him, and there was not a print match. The report also noted that petitioner may be eliminated from the population that could have deposited the seminal fluid in the victim's pants. See Doc. 53, Ex. E at 2. The February 12 report revised this finding and concluded that petitioner could *not* be eliminated from the population that deposited the seminal fluid in the victim's pants, but that "it would appear that another individual's seminal fluid is also present." See Doc. 53, Ex. F at 2. Neither the January 17 nor the February 12 report mentioned the rape kit or whether SEMO had compared semen from the rape kit to the blood and saliva samples taken from petitioner.

On September 9, 1994, petitioner filed a state habeas petition alleging his innocence. Petitioner claimed that prior to the entry of his guilty plea, he was beaten by the Bollinger County Sheriff and two of his deputies. Petitioner also claimed that he is diabetic, and that around the time of his plea, he had not received his insulin injections for five days, and that he was injected with a mind-altering medication. Petitioner also claimed there was evidence to show that he was in Mississippi at the time of the crimes against Ms. Doe. The state court dismissed the petition on procedural grounds because petitioner had never filed a Rule 24.035 motion.

On August 29, 1994, petitioner filed in United States District Court, Eastern District of Missouri a federal habeas petition, pursuant to 28 U.S.C. § 2254. This is the above-captioned cause

---

[2]The two reports were made available to petitioner sometime in 2003.

of action. In his § 2254 petition, petitioner alleged four grounds for relief: (1) his arrest in Mississippi was unlawful in that he was refused the right to contact an attorney, and officers in Mississippi hit him in the head causing a concussion; (2) his guilty plea was coerced in that he was beaten by officers in Bollinger County, and these officers withheld his diabetes medication and injected him with mind-altering medication; (3) he was not properly arraigned; and (4) he was improperly sentenced as a repeat offender. Petitioner also claimed that he was innocent, and that he had evidence to prove he did not commit the crimes against Ms. Doe.

On October 27, 1995, the Honorable Lawrence O. Davis denied petitioner's § 2254 petition, holding that petitioner's failure to file a Rule 24.035 motion defaulted his claims. Judge Davis found that petitioner had not shown cause and prejudice or actual innocence to lift the procedural bar. Judgement was entered against petitioner on October 27, 1997.

Petitioner appealed the denial of his § 2254 habeas petition to the Eighth Circuit Court of Appeals. On appeal, petitioner argued that his habeas petition should not have been dismissed because there was evidence of his actual innocence. In an en banc decision, the Eighth Circuit affirmed the denial of petitioner's § 2254 habeas petition. Weeks v. Bowersox, 119 F.3d 1342 (8th Cir. 1997). The Court of Appeals held that petitioner had failed to present sufficient evidence of his actual innocence, and that mere allegations that evidence existed was not enough. Id. at 1346. The Eighth Circuit also held that petitioner was not entitled to a hearing to develop evidence of actual innocence. Id.

Petitioner appealed that decision to the United States Supreme Court. Petitioner filed a writ of certiorari, which was denied on January 26, 1997. Weeks v. Bowersox, 522 U.S. 1093 (1998).

On October 23, 2000, petitioner filed a petition with the Eighth Circuit for permission to file a successive habeas corpus. The State opposed the motion, and it was denied on November 29, 2000.

On October 3, 2001, petitioner filed a post-conviction motion for forensic DNA testing in the Circuit Court of Cape Girardeau County, Missouri. A similar motion was filed on January 30, 2002, in Bollinger County, Missouri. Petitioner sought testing of certain DNA, blood, saliva, semen and hair that would prove his innocence. He claimed that this evidence was collected in relation to the crime, and that the technology for testing was not available at the time. The motion was denied, and petitioner appealed. The Missouri Court of Appeals affirmed, holding petitioner was not entitled to DNA testing after pleading guilty.

On August 3, 2004, the Missouri Supreme Court reversed. The Missouri Supreme Court held that post-conviction DNA testing under Mo. Rev. Stat Sec. 547.035 was available to persons like petitioner who had pleaded guilty. Weeks v. Missouri, 140 S.W.3d 39, 45 (Mo. banc. 2004). The Missouri Supreme Court also held that petitioner had met his burden and alleged sufficient facts to show identity was at issue, DNA testing was not reasonably available at the time he entered guilty pleas, and that there was reasonable probability that he would not have been convicted of rape and kidnapping if DNA results had been obtained prior to trial. Id. at 45-46.

Pursuant to a court order, upon which the parties had agreed, the victim's rape kit with the vaginal swab was submitted to the Paternity Testing Corporation for DNA testing in the fall of 2004. See Doc. 59, Ex. K. In a report dated November 22, 2004, the Paternity Testing Corporation concluded that sperm collected from the vaginal swab of the victim matched the DNA profile of petitioner. "The DNA profile from the Q1 male fraction matches the DNA profile Ruben (sic)

Weeks. Excluding an identical twin, Ruben (sic) Weeks is the source of the SNA observed in the Q1 male fraction to a reasonable degree of scientific certainty."[3] See Doc. 53, Ex. G.

On May 18, 2005, petitioner filed a pro se petition for writ of habeas corpus pursuant to Missouri Supreme Court Rule 91 in the Circuit Court of DeKalb County, Missouri. The petition was denied on October 3, 2005. Petitioner filed a Rule 91 motion in the Missouri Court of Appeals, Southern District, which was denied on April 2, 2007. Petitioner appealed to the Missouri Supreme Court. Petitioner argued that he was entitled to relief because the state prosecutor failed to disclose exculpatory evidence, namely the January 17 and February 13, 1992 reports from SEMO, and that his guilty plea was not knowingly and voluntarily made because of alleged mistreatment by jail personnel and the medication he was taking. The Missouri Supreme Court denied petitioner's petition for writ of habeas corpus on June 29, 2011.

On September 12, 2011, petitioner filed a motion with the Eighth Circuit Court of Appeals requesting that the Eighth Circuit recall the mandate in Weeks v. Bowersox, 119 F.3d 1342 (8th Cir. 1997). Petitioner argued that the mandate should be withdrawn because the State withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). The Court of Appeals denied petitioner's motion.

---

[3]Petitioner did not bring the report from Paternity Testing Corporation to the Court's attention in his original Rule 60(b) motion. Respondent did in his opposition. Petitioner claims in his reply memorandum that he has evidence that the results of Paternity Testing Corporation are invalid and unreliable, and that he could prove this in an evidentiary hearing. Petitioner attached the following to his reply memorandum: correspondence from a second DNA testing facility regarding a DNA analysis of petitioner, which was not compared to the semen in the victim's rape kit; estimates for further DNA testing from yet another DNA testing facility; correspondence with petitioner's attorney regarding a to-be completed independent review of Paternity Testing Corporation's report; and the Curriculum Vitae of Scott Johnson, a lab manager and forensic analyst for Paternity Testing Corporation. None of this is persuasive evidence that the results of the genetic testing done by Paternity Testing Corporation was invalid or unreliable.

On July 20, 2012, petitioner filed the present motion for relief from final judgment in the above-captioned cause of action.[4] Petitioner requests relief from the denial of his habeas corpus action pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Petitioner, who is represented by counsel, argues there are three reasons for opening the final judgment in this case: (1) the state prosecutor and respondent withheld from petitioner the January 17 and February 12, 1992 SEMO reports, both of which contained exculpatory evidence; (2) his plea was not knowingly, voluntarily and intelligently entered because he was both improperly and over-medicated by jail staff; and (3) his plea was not knowingly, voluntarily and intelligently entered because he was suffering from severe head trauma on the date of the guilty plea. Petitioner argues, "[i]n light of the new evidence that was not previously addressed in [the] writ of habeas corpus dismissed by the Honorable Judge Davis, Petitioner now seeks relief from such judgment pursuant to Federal Rules of Civil Procedure, Rule 60(b)(6). . . ." See Doc. 42 at 3.

## *II. Discussion*

Rule 60(b) of the Federal Rules of Civil Procedure allows a party to seek relief from a final judgment and request reopening a case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence.[5] A habeas petitioner may seek relief from final judgment

---

[4]The Honorable Lawrence O. Davis retired in 2001, and upon the filing of petitioner's motion for relief from final judgment, the case was assigned to the undersigned.

[5]Rule 60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or

under Rule 60(b) in certain circumstances. "Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. § 2254 only 'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules." Gonzalez v. Crosby, 545 U.S. 524, 529 (2005) (citing 28 U.S.C. § 2254). In other words, Rule 60(b) applies to habeas proceedings to the extent it is not inconsistent with the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Ward v. Norris, 577 F.3d 925, 932 (8th Cir. 2009) (citing Gonzalez, 545 U.S. at 529).

The AEDPA limits petitioners from filing successive habeas petitioners in federal court. It imposes three requirements on successive habeas petitions:

> First, any claim that has already been adjudicated in a previous petition must be dismissed. § 2244(b)(1). Second, any claim that has not already been adjudicated must be dismissed unless it relies on either a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence. § 2244(b)(2). Third, before the district court may accept a successive petition for filing, the court of appeals must determine that it presents a claim not previously raised that is sufficient to meet § 2244(b)(2)'s new-rule or actual-innocence provisions. § 2244(b)(3).

Gonzalez, 545 U.S. at 529. According to Supreme Court law, a Rule 60(b) motion is a second or successive habeas corpus application which falls under the restrictive requirements of § 2244 if the motion contains a "claim." Id. When a Rule 60(b) motion presents a "claim," it must be treated as a second or successive habeas petition under the AEDPA. Id.

---

discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed. R. Civ. P. 60(b).

According to the Eighth Circuit, "a claim is defined as an 'asserted federal basis for relief from a state court's judgment of conviction' or as an attack on the 'federal court's previous resolution of the claim on the merits.'" Ward, 577 F.3d at 933 (citing Gonzalez, 545 U.S. at 530, 532). "On the merits" refers "to a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d)." Id. No claim is presented if the motion attacks "some defect in the integrity of the federal habeas proceedings." Id. "Likewise, a motion does not attack a federal court's determination on the merits if it 'merely asserts that a previous ruling which precluded a merits determination was in error-for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar.'" Id. (quoting Gonzalez, 545 U.S. at 532 n. 4).

Here, petitioner asserts there are three reasons that the Court should grant him relief from final judgment in his Rule 60(b) motion: (1) his guilty plea was not freely and voluntarily given because crucial and exculpatory evidence was withheld by the State in violation of Brady v. Maryland, 373 U.S. 83 (1963); (2) his plea was not knowingly, voluntarily and intelligently entered because he was improperly and over-medicated by jail staff; and (3) his plea was not knowingly, voluntarily and intelligently entered because he was suffering from severe head trauma on the date of the guilty plea. Based on Supreme Court precedent as interpreted by the Eighth Circuit, the Court finds all three of these reasons for relief from final judgment are "claims." Ward, 577 F.3d 933. Petitioner is asserting "federal bas[es] for relief from a state court's judgment of conviction." Id. Petitioner first reason, that the State withheld exculpatory evidence, is an entirely new habeas claim based on Brady that has never been raised in these proceedings. The other two reasons, that his plea was not knowing and voluntary because he was suffering from a head injury and that he was

improperly medicated, were habeas claims petitioner previously raised his original § 2254 petition.

Petitioner argues in his reply memorandum that his Rule 60(b) motion is not a second or successive petition, but rather it is an attack on the integrity of the federal habeas proceeding because the new exculpatory evidence, which he claims the State fraudulently withheld, establishes that he is innocent, and he previously argued in these proceedings that he was actually innocent as a means lifting the procedural bar to his § 2254 petition.[6] Even if this Court were to construe petitioner's first reason for relief from final judgment not as a separate habeas claim, but as evidence of petitioner's actual innocence – an issue that was addressed by Judge Davis in the original federal habeas proceedings – petitioner still is not entitled to relief under Rule 60(b) because the motion is time-barred.

As stated above, Rule 60 allows for relief from final judgment for six specific reasons. Petitioner states in his motion and memorandum in support that he is seeking relief under Rule 60(b)(6), the catch-all provision, which allows relief for final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Petitioner, however, states that he is seeking relief from final judgment based on exculpatory evidence that was not previously made known to him or Judge Davis due to the fraudulent conduct of the State. In support of his claim of actual innocence, as well as his alleged Brady violation, petitioner would like to bring to this Court's attention laboratory reports dated January 17 and February 12, 1993 – reports that were not disclosed to petitioner until sometime in 2003, well after the 1995 judgment in this case.

---

[6]Petitioner does not address his other two reasons for relief in his reply memorandum, and he appears to concede that these are habeas "claims" that were previously raised in his § 2254 petition.

Contrary to his assertion, petitioner's Rule 60(b) motion does not fall under subsection (6), but rather his stated reason for relief more accurately falls under subsection (2) – "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)" – or subsection (3) – "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(2) and (3). The provisions of Rule 60(b) are mutually exclusive, and if the reason offered for relief falls under on of the more specific subsections of Rule 60(b)(1)-(5), the reason will not justify relief under the catch-all provision of 60(b)(6). Liljeberg v. Health Servs. Corp., 486 U.S. 847, 863 n.11 (1988). See also Corex Corp. v. United States, 638 F.2d 119 (9th Cir. 1981) (where party moved for relief under subsection (b)(6) for "any other reason justifying relief" but furnished no reason other than alleged newly discovered evidence, motion was to be reviewed as if it had been made under subsection (b)(2) allowing relief for "newly discovered evidence.").

Subsections (2) and (3) have specific time limitations that have expired in this case. Motions pursuant to Rule 60(b)(1), (2), and (3) must be brought "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The one-year time limit for motions based on Rule 60(b)(1)-(3) cannot be avoided by bringing the motion under Rule 60(b)(6). United States v. Dakota Cheese, Inc. (In re Matter of a Grand Jury Subpoena Directed to Dakota Cheese, Inc.), 923 F.2d 576, 577 (8th Cir. 1991) (motion based on newly discovered evidence is governed by Rule 60(b)(2) and may not be brought after one year under Rule 60(b)(6)). Petitioner's Rule 60(b) motion was brought almost seventeen (17) years after the entry of judgment. Petitioner is precluded from seeking relief pursuant to Rule 60(b) because it is clear that his motion

is untimely.[7]  Id.;  Lester v. Empire Fire & Marine Ins. Co., 653 F.2d 353, 354 (8th Cir. 1981) (motion based on fraud was time-barred).

### *III. Conclusion*

This Court finds petitioner is not entitled to relief from final judgment pursuant to Rule 60(b) because in his motion he raises claims that amount to a second or successive habeas petition. Petitioner must receive permission from the United States Court of Appeals for the Eighth Circuit before he may bring such claims in this Court. 28 U.S.C. § 2244(b)(3). In the alternative, the Court finds petitioner's motion for relief pursuant to Rule 60(b) is time-barred.

Accordingly,

**IT IS HEREBY ORDERED** petitioner Rubin Weeks's motion for relief from final judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure is **DENIED.** [Doc. 42]

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability.

*[signature]*
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this   5th   day of March, 2013.

---

[7]Even if the Court were to find petitioner's motion proper under Rule 60(b)(6), and the one-year time limitation did not apply, a motion under the catch-all provision for relief from judgment must be made within a reasonable time. Petitioner learned of the so-called exculpatory evidence in 2003. He did not file his motion for Rule 60(b) relief for almost ten years, which is not within a reasonable time. Nucor Corp. v. Nebraska Pub. Power Dist., 999 F2d 372, 374-75 (8th Cir. 1993) (Rule 60(b)(6) motion filed after three years was untimely).